# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ANSARI MOHAMAD and**
**SHAMEENA MOHAMAD,**

               **Plaintiffs,**

**v.**                              **Case No:  6:18-cv-1386-Orl-CEM-DCI**

**WELLS FARGO BANK, N.A., HSBC**
**BANK USA, AND BROCK AND**
**SCOTT, PLLC,**

               **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS AMENDED COMPLAINT (Doc. 46)** |
| **FILED:** | **February 1, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part.**

| | |
|---|---|
| **MOTION:** | **DEFENDANT BROCK AND SCOTT, PLLC'S MOTION TO DISMISS AMENDED COMPLAINT (Doc. 64)** |
| **FILED:** | **March 5, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

## I.    <u>Introduction</u>

This matter first came to this Court in December 2016 when Plaintiffs Ansari and Shameena Mohamad (Plaintiffs) filed an action against, among others, HSBC Bank N.A. and America's Servicing Company, a division of Wells Fargo. *See Mohamad et al. v. H.S.B.C. et al*, 6:16-cv-2239-ORL-41DCI (M.D. Fla.).   Ultimately, that underlying case settled following a settlement conference before United States Magistrate Judge Thomas B. Smith. *See id*. at Doc. 59.  Thus, on May 15, 2018, the Court dismissed the case with prejudice, subject to the parties moving to re-open the case within 60 days. *Id*. at Doc. 61.  The parties never sought to re-open the case within the time permitted.

Instead, on August 22, 2018, Plaintiffs filed a complaint initiating this action.  Doc. 1. Thereafter, Plaintiffs filed a seven-count Amended Complaint that remains the operative pleading. Doc. 34.  In the Amended Complaint, Plaintiffs alleged the following claims:

- Counts I and II: violations by Wells Fargo of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692.  Doc. 34 at 10-12.

- Count III: violation by Wells Fargo of the Florida Consumer Collections Practices Act (FCCPA), Florida Statutes § 559.72(9).  Doc. 34 at 12-13.

- Count IV: breach by Wells Fargo, Brock and Scott, and HSBC (collectively, Defendants) of a settlement agreement (the Settlement Agreement) entered into between Defendants and Plaintiffs that had resolved *Mohamad et al. v. H.S.B.C. et al*, 6:16-cv-2239-ORL-41DCI (M.D. Fla. March 27, 2018). Doc. 34 at 13-14.

- Count V: breach by Brock and Scott and HSBC of an implied duty of good faith and fair dealing arising from the terms of the Settlement Agreement. Doc. 34 at 14-16.

- Count VI: violation by Brock and Scott and HSBC of Florida Statutes section 701.04(2).  Doc. 34 at 16-17.

- Count VII: request for declaratory relief in the form of a declaration of the rights of the parties under the Settlement Agreement.  Doc. 34 at 17-18.

As alleged, the FDCPA claims in the Amended Complaint relate to a mortgage statement dated July 16, 2018, that was sent from Wells Fargo to Plaintiffs' attorney.  Doc. 34, Exhibit C.[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Wells Fargo and Brock and Scott separately move to dismiss the alleged violations contained within the Amended Complaint. Specifically, Wells Fargo moves to dismiss Counts I, II, III, IV, and VII of the Amended Complaint.  Doc. 46.  In its own motion, Brock and Scott moves to dismiss Counts IV, V, VI, and VII.  Doc. 64.

Separately, it appears from a review of the docket that Plaintiff has never served HSBC and, as such, it is recommended that the Court dismiss HSBC from this action without prejudice.[2] *See* Fed. R. Civ. P. 4(d).  This report shall serve as notice of the potential of that dismissal as required by Rule 4(d), and Plaintiffs may object to this Report if they seek to prosecute this case against HSBC.

   a.  **The Allegations in the Complaint – Counts I, II, and III**

Because the undersigned is considering motions to dismiss made pursuant to Rule 12(b)(6), the undersigned must take as true the factual allegations in the Complaint.  Specifically relevant to the FDCPA and FCCPA violations are the following factual allegations, all of which were incorporated by reference in Counts I, II, and III (all paragraph citations are to the Amended Complaint (Doc. 34)):

- Plaintiffs have been subjected to the WELLS FARGO's [sic] false representations of its right to collect on a promissory note, which led to the

---

[1] Federal claims in the Amended Complaint give rise to this Court's federal question jurisdiction, although Plaintiffs also purport to allege diversity jurisdiction in relation to the state law claims. The undersigned notes that Plaintiffs failed to sufficiently allege the citizenship of the parties and, thus, the Court's jurisdiction is, as alleged, only proper due to the existence of the federal claims.

[2] HSBC has not appeared in this case, and there is nothing in the record to indicate that HSBC has been served.

Plaintiffs being named as defendant in a wrongful mortgage foreclosure. ¶ 34.

- On August 24, 2006, the Plaintiffs executed and delivered a promissory note and mortgage securing payment to Dream House Mortgage Association. ¶ 38

- The mortgage and note on which WELLS FARGO are [sic] attempting to collect money is "debt" within the meaning of section 15 U.S.C. § 1692a(5), as the foreclosure lawsuit addresses an alleged obligation of a consumer to pay money arising out of transaction [sic] in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes. ¶ 35.

- WELLS FARGO is "debt collector(s)" [sic] as that term is defined by 15 U.S.C. § 1692a(6), to wit: WELLS FARGO used the mail in a business the principal purpose of which was to collect debt; regularly [sic] attempts to collect debts owed or due to another; attempted to collect a debt that was already in default when it acquired the debt. ¶ 36.

- WELLS FARGO is a "debt collector(s)" because the debt was in default when acquired by the Defendants. . . . ¶ 37.

- The foreclosure sale of the Mohamad's property took place on September 11, 2018. ¶ 39.

- The Plaintiff is not indebted to the Defendant for any sums of money due under a mortgage, note, or contract. ¶ 42.

- Wells Fargo mailed to the Plaintiffs' counsel a monthly mortgage statement(s) (Exhibit C) that contained the loan number of xxxxxx9317 with a minimum amount due of $334,517.93 to reinstate the Plaintiffs' account. The mortgage statement mailed by WELLS FARGO provided a payment coupon that was pre-addressed to Wells Fargo, P.O. Box 14591, Des Moines, IA 50306-3591. ¶ 43.

- The mortgage statements were mailed by WELLS FARGO for the purpose to [sic] induce the Plaintiffs to pay a phantom debt by misleading the Plaintiffs into believing that Plaintiffs could keep their home if the delinquent amount due $334,517.94 is paid rather that [sic] the amount need [sic] to satisfy the final judgment of foreclosure to exercise their right of redemption [of $679,333.42]. ¶ 44.

- As "least sophisticated consumer(s)," the Plaintiffs would reasonably believe that WELLS FARGO, by mailing monthly mortgage statements, was attempting to induce payment on a phantom debt and/or that the

Plaintiffs could keep their home by reinstating the subject loan and keep their home by making a payment of $334,517.93 to WELLS FARGO instead of satisfying the nearly $700,000.00 amount now due under the final judgment. ¶ 45.

**b.   The Allegations in the Complaint – Counts IV, V, VI, and VII**

Specifically, relevant to the remaining counts are the following factual allegations, all of which were incorporated by reference in Counts IV, V, VI, and VII (all paragraph citations are to the Amended Complaint (Doc. 34)):

- On August 24, 2006, the Mohamads executed and delivered a promissory note and mortgage securing payment under the note in favor of Dream House Mortgage Association. On November 14, 2007, HSBC Bank USA, National Association, as Trustee for the Holders of Nomura Home Equity Loan, Inc., Home Equity Loan Trust, Series 2007-1 ("HSBC" or "Lender") sought to foreclose the mortgage executed by Plaintiffs for failure to make payments in the above-styled action. ¶ 14.

- On September 8, 2008, the [state] Court entered *in-personam* Final Summary Judgment of Foreclosure was entered [sic] in the Foreclosure Action (the "Foreclosure Judgment") when HSBC requested and the court reserved jurisdiction to enter a deficiency judgment against the Mohamads. ¶ 14.

- Post-judgment, the Mohamad's [sic] commenced two federal court actions against various entities, including Wells Fargo, the Plaintiff's servicer, and Brock and Scott, PLLC ("B & S"), the Plaintiff's counsel in the foreclosure complaint, alleging violation of the 15 U.S.C. 1692 – *Fair Debt Collections Practices Act*. ¶ 15.

- On May 11, 2018, the Plaintiff, WELLS FARGO, B&S, the Mohamad's, and their respective counsel entered into a confidential settlement agreement as part of a court-ordered mediation before United States Magistrate Judge Thomas B. Smith. As part of the settlement, Plaintiffs voluntarily dismissed *with prejudice* all their actions and claims, including those against Wells Fargo, in exchange for a complete release of all debts and judgments the Plaintiff sought to collect from the Mohamads, including a waiver of deficiency amounts. . . . ¶ 16.

- On May 11, 2018, the Plaintiffs, and HSBC, and its counsel, B&S, and WELLS FARGO agreed, in writing, to release the Mohamads from their obligations due under the promissory note and mortgage subject to the foreclosure action. Further, the Defendants agreed that all sums of money

due, by reason of any loans made for which the foreclosed property is collateral, are discharged and the mortgage and/or final judgment entered into this case would be satisfied. ¶ 17.

- The public auction of the Plaintiffs' property pursuant to the Foreclosure Judgment occurred on September 11, 2018. ¶ 18.

- A final judgment of foreclosure can be *in rem* (against the property), *in personam* (against the homeowner), or both. ¶ 20.

- The court's reservation of jurisdiction for a deficiency judgment constitutes an *in-personam* judgment against Plaintiffs. ¶ 21.

- The Defendants failed to execute any and all supplementary documents, and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of the parties' agreement. ¶ 22.

- Because the Defendants have failed to update their records or record an instrument acknowledging the Mohamads' satisfaction of the mortgage pursuant to the parties' settlement agreement, the Mohamad's have no way of knowing whether the Defendants will seek a separate in-personam action against them. ¶ 23.

- In dereliction of the settlement agreement, HSBC's servicer, WELLS FARGO, continued to send monthly mortgage statements to the Mohamads seeking amounts due under the promissory note and mortgage. In dereliction of the settlement agreement, WELLS FARGO took no action that was necessary or appropriate to indicate to the Plaintiffs that they have been discharged from its [sic] obligations due underlying note and mortgage [sic] and that the reservation of jurisdiction in the foreclosure judgment to enter a deficiency judgment was nullified by the parties' settlement agreement. ¶ 24.

- On or about October 18, 2018, the Mohamads provided notice of default of the settlement agreement to B&S and HSBC, notifying them that they failed to diligently execute any and all supplementary documents, and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of the Settlement Agreement entered into on May 11, 2018. ¶ 25.

- B&S and HSBC failed to cure its' [sic] deficiencies. ¶ 26.

- As a result of B&S and HSBC's inactions and omissions, the Plaintiffs have been forced to retain the undersigned to mitigate their damages by filing a motion in the foreclosure court seeking appropriate relief that reflects that the reservation of jurisdiction in the foreclosure judgment to enter a

deficiency judgment was nullified by the parties' settlement agreement. ¶ 27.

- B&S and HSBC's inactions and omissions, and overall failure to adhere to the terms of the settlement agreement are intentional and willful because B&S has served the Plaintiff with a "57.105" 21-day safe harbor letter that threatens to file a motion for sanctions against the Plaintiffs and the undersigned for merely seeking to enforce the terms of the settlement agreement. ¶ 28.

- [T]he Mohamads have been denied traditional mortgage financing to secure the purchase of another home due to the prospective lenders' fear of the Mohamads having to pay a deficiency judgment. ¶ 29.

- In their pursuit to obtain a mortgage loan, the Mohamads have been quoted interest rates as high as 9% because the recorded final judgment of foreclosure in the foreclosure action reserves jurisdiction on deficiency proceedings and the potential pending deficiency proceedings is preventing the Mohamads from obtaining a conventional mortgage loan. ¶ 30.

## II.    The Rule 12(b)(6) Standard

In considering a motion to dismiss, a court must view the challenged complaint in the light most favorable to the plaintiff. *See, e.g.*, *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). The court is limited in its consideration to the pleadings and any exhibits attached to those pleadings. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). And the court will liberally construe a plaintiff's allegations in the complaint in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). But "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). As has been succinctly explained in this District:

> In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a

cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).  However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).  The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id*. at 555, and cross "the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

*Destra v. Demings*, No. 6:15-cv-1143-Orl-31TBS, Doc. 46 at 3-4 (M.D. Fla. Nov. 10, 2015).

### III.  Discussion

As set forth in the following paragraphs, the undersigned respectfully recommends that Wells Fargo's Motion to Dismiss be denied as to the FDCPA and FCCPA claims (Counts I, II, and III) primarily because, as Wells Fargo concedes and Plaintiffs assert, the Court has already decided almost the exact same issues in that manner in the underlying case.  However, the undersigned recommends that Wells Fargo's Motion to Dismiss be granted as to Counts IV and VII, and that Brock and Scott's Motion to Dismiss be granted in full, such that Counts IV, V, VI, and VII be dismissed.  Finally, the undersigned recommends that HSBC be dismissed without prejudice from this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 4(d).[3]

### a.  *Counts I, II, and III: Violations of the FDCPA and FCCPA*

Plaintiffs alleged in Count I that Wells Fargo "violated the FDCPA by 1) falsely representing the character, amount, or legal status of a debt; 2) falsely representing that nonpayment of a debt will result in sale of property when such action would be unlawful; 3) threatening to take action that cannot legally be taken; [and] 4) using a false representation or

---

[3] Like Brock and Scott, HSBC is alleged as a defendant in Counts IV, V, VI, and VII.  It should be noted that all of the discussion in this Report recommending dismissal as to Brock and Scott is equally applicable as to HSBC, including Plaintiffs' insufficient allegations concerning damages, the inapplicability of the Florida statute, and the insufficiency of the allegations within the declaratory judgment claim.

deceptive means to collect or attempt to collect a debt." Doc. 34 at 10. In Count II, Plaintiffs alleged that Wells Fargo violated the FDCPA, 15 U.S.C. § 1692e(11), by using "false, deceptive and/or misleading communications by mailing a mortgage statements [sic] to the Plaintiffs attorney by failing to indicate that the mortgage statement was a communication from a debt collector . . . ." Doc. 34 at 12. In Count III, Plaintiffs alleged a violation of the FCCPA based upon the same facts underlying the alleged FDCPA violations.[4]

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). A plaintiff asserting a FDCPA claim must allege "(1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). In its Motion to Dismiss, Wells Fargo concedes that it is a "debt collector" as defined by the FDCPA. Doc. 46 at 6. However, it disputes whether Plaintiffs have sufficiently alleged that the conduct at issue is related to debt collection. Doc. 46 at 6.

In the Amended Complaint, Plaintiffs alleged, generally, that Wells Fargo "attempted to mislead the Plaintiffs . . . and the Plaintiffs' attorney [in]to believ[ing] that the debt is legally enforceable through a mortgage foreclosure action, and otherwise attempt[ed] to collect a debt in a manner inconsistent with applicable debt collection law." Doc. 34 at 10. In particular, they alleged that Wells Fargo's mailing of mortgage statements[5] "attempted to mislead the Plaintiffs . . . and the Plaintiffs' attorney into believing that if" they paid the reinstatement amount due then the

---

[4] "[T]he FDCPA and the FCCPA are 'largely identical and the FCCPA is construed in accordance with the FDCPA." *Jones v. Select Portfolio Servicing, Inc.*, 2018 WL 2316636 (S.D. Fla. May 2, 2018) (quoting *Lear v. Select Portfolio Servicing, Inc.*, No. 17-62206-CIV, 2018 WL 1960108, at *1 (S.D. Fla. Apr. 25, 2018)).

[5] Plaintiff asserts there were multiple statements sent by Wells Fargo, but the Amended Complaint includes a single statement dated July 16, 2018. Doc. 34, Exhibit C.

"mortgage loan would be reinstated," Plaintiffs "could avoid foreclosure, . . . and could keep their home."  Doc. 34 at 10.

Regulation Z of TILA requires mortgage lenders to send mortgage statements to mortgagors. *See* 12 C.F.R. § 1026.41; *see also Williams v. Bank of America, N.A.*, 2017 WL 3662441, at *4 (M.D. Fla. Aug. 24, 2017) ("[Mortgage lenders are] required by federal law, specifically the Federal Truth in Lending Act Regulation Z to send mortgage statements to [mortgagors]."). Courts in this Circuit consistently hold that monthly statements sent in compliance with TILA do not constitute debt collection under the FDCPA. *See Williams v. Bank of America, N.A.*, 2017 WL 3662441, at *4 (M.D. Fla. Aug. 24, 2017); *Antoine v. Carrington Mortgage Services, LLC*, 2017 WL 3404389 (S.D. Fla. Aug. 8, 2017); *Brown v. Select Portfolio Servicing, Inc.*, No. 16-62999-CIV, 2017 WL 1157253, at *2 (S.D. Fla. Mar. 24, 2017) ("Plaintiff cannot state a claim under the FDCPA with respect to the monthly mortgage statements sent pursuant to federal law.").

However, when the mortgage statement includes debt collection language in addition to that which is required by TILA, those statements may constitute debt collection activity that is subject to the FDCPA:

> [W]hen determining whether a communication is "in connection with the collection of any debt," courts should look to the language of the letters in question—specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [sender] was attempting to collect a debt and was acting as a debt collector.

*Pinson v. Albertelli Law Partners LLC*, 618 Fed. App'x 551, 553 (11th Cir. 2015) (citing *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014); *see also Green v. Specialized Loan Servicing LLC*, 280 F. Supp. 3d 1349, 1355 (M.D. Fla. 2017) (noting that a statement sent pursuant to TILA that does not "add impermissible demands for payment not called for in a regular

- 10 -

TILA statement" does not constitute debt collection activity); *Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324, 1328 (M.D. Fla. 2011) (holding that increasingly severe statements concerning delinquency status of account constituted debt collection language); *Lear v. Select Portfolio Servicing, Inc.*, 309 F. Supp. 3d 1237 (S.D. Fla. Apr. 25, 2018) (finding that a statement that "This is an attempt to collect a debt. All information obtained will be used for that purpose," constituted debt collection language).

Indeed, in the case giving rise to the Settlement Agreement that is now at issue in this action, this Court previously found that Plaintiffs sufficiently alleged violations of the FDCPA in relation to the mailing of a mortgage statement substantially similar to the one in this case. *See Mohamad et al. v. H.S.B.C. et al*, 6:16-cv-2239-ORL-41DCI, Doc. 41 at 23-24 (M.D. Fla. March 27, 2018). To be sure, that case involved similar parties, the same mortgage, and a similar mortgage statement with an attached payment coupon. *See id.* After discussing the relevant law, the Court reasoned as follows:

> Although much of the information in the monthly mortgage statements was required under TILA, the monthly mortgage statements also contained information that was not required under the regulation. Here, the monthly mortgage statements included a pre-addressed payment coupon, (*see* Doc. 26 ¶¶ 39–40), as well information about various payment options, (*see* Doc. 26-1 at 3; Doc. 26-2 at 3), neither of which are required under parts 1026.41 or 1026.7. The inclusion of a payment coupon and payment information typically leads courts to conclude that a communication constitutes debt collection activity under the FDCPA. *See, e.g.*, *Pinson*, 618 F. App'x. at 554 (noting that a communication may implicitly demand payment where it describes how the debt may be paid and provides the phone number and address of where to send payment); *Roth*, 2016 WL 3570991, at *3–4 (concluding that the statement sent to the plaintiff constituted debt collection activity where, among other things, it listed different payment methods, and there was a detachable payment coupon and citing additional cases for support); *see also Jackson*, 2017 WL 4347382, at *3 (explaining that the monthly mortgage statement at issue was nearly identical to a statement that the court previously held did not constitute debt collection activity because it was sent pursuant to TILA but noting that the statement at issue "ma[d]e[] one significant change—it add[ed] a [p]ayment [c]oupon to the form" and ultimately determining that there was a factual dispute as to whether the statement constituted debt collection activity). Moreover, this

Court can plausibly infer that this information would cause the least sophisticated consumer to believe that Defendants were attempting to induce payment. Thus, the Court concludes that, at this stage of the litigation, Plaintiffs have sufficiently alleged that the monthly mortgage statements constitute debt collection activity under the FDCPA. To the extent Defendants' Motion asks the Court to dismiss Plaintiffs' claims because they failed to allege debt collection activity under the FDCPA, Defendants' Motion will be denied.

*See id.*

While Wells Fargo's perfunctory assertion that the mortgage statement at issue here is "different" from that in the underlying case, Wells Fargo does nothing to actually distinguish the mortgage statement here from that one. *See* Doc. 46 at 10. Thus, given the paucity of Wells Fargo's argument, the finding in the prior case, and the preliminary stage of these proceedings, the undersigned sees no reason to recommend that the Court make a different ruling here than the Court already made in the underlying case. And while Wells Fargo identified some district court decisions made subsequent to the Court's prior ruling that may have had a different outcome, Wells Fargo failed to sufficiently state a basis for undersigned to recommend that the Court vary from its prior decision.

With respect to the FCCPA and Count III, the undersigned again finds that Plaintiffs sufficiently alleged facts to support a claim. Because the "interpretations of the Federal Trade Commission and the federal courts relating to the Fair Debt Collection Practices Act" are "due consideration and great weight" when applying the FCCPA, the undersigned finds that Plaintiffs have sufficiently alleged debt collection activity under § 559.72(9). Although Wells Fargo argues that Plaintiffs failed to allege that Wells Fargo "knowingly" attempted to collect an illegitimate debt, Wells Fargo signed the Settlement Agreement and agreed to "remise, release, acquit, satisfy, and forever discharge" Plaintiffs of all "debts, dues, sums of money, [and] accounts." Doc. 46 at 15; Doc. 64 at 5. Thus, as alleged, it appears that Wells Fargo knew that it had no legal right to

the debt on which Plaintiff has alleged Wells Fargo was attempting to collect, and, thus, Plaintiffs

alleged facts in Count III sufficient to establish a claim under the FCCPA.

### b. *Count IV: Breach of Contract*

Plaintiffs alleged in Count IV that Defendants breached the Settlement Agreement between

them and Plaintiffs.  Doc. 34 at 13-14.  Under Florida law, a breach of contract "arises when there

exists (1) a valid contract; (2) a material breach of that contract; and (3) resulting damages."

*Energy Smart Indus., LLC v. Morning Views Hotels-Beverly Hills, LLC*, 660 Fed. Appx. 859, 862

(11th Cir. 2016) (citation and internal quotations omitted).  Neither Wells Fargo nor Brock and

Scott dispute the existence of a valid contract.  Doc. 64 at 4; Doc. 46 at 17.  Rather, they argue that

"Plaintiffs have not sufficiently alleged either a material breach of the Settlement Agreement or

damages resulting therefrom." Doc. 64 at 4.

### 1. *Breach*

In addition to establishing a valid contract and damages, Plaintiffs must allege a material

breach.  *See Energy Smart Indus., LLC*, 660 Fed. Appx. at 862.  Plaintiffs alleged that Wells Fargo

and Brock and Scott breached the Settlement Agreement:

> [B]y failing to update the [Plaintiffs'] account, execute any and all supplementary
> documents, and/or to take any additional actions that may be necessary or
> appropriate to give full force and effect to the terms and intent of the parties'
> agreement, including nullifying the foreclosure judgment's reservation of
> jurisdiction to enter a deficiency judgment against the [Plaintiffs].

Doc. 34 at 14. Specifically, they argue that, although neither Wells Fargo nor Brock and Scott has

pursued a deficiency claim, they have breached the Settlement Agreement because 1) they did not

"update their records or record an instrument acknowledging the [Plaintiffs'] satisfaction of the

mortgage pursuant to the [Settlement Agreement]" and 2) Wells Fargo "continued to send monthly

mortgage statements to the [Plaintiffs]." Doc. 34 at 6.  While the parties have not provided the

Court with the Settlement Agreement, Plaintiff has included excerpts in its response to the Motions to Dismiss, and has asserted that the relevant terms of the Settlement Agreement include the following:[6]

> 8. [Plaintiff] consents to the sale of the Property in the Foreclosure Case. [Plaintiff] shall not do anything to interfere with, hinder, or delay the foreclosure sale, file any objections to the sale, or take any other action post sale to interfere with, hinder, or delay the issuance of the certificate of sale and certificate of title to the Property.
>
> 9. Defendants relinquish, waive, and release any deficiency claim they may have against [Plaintiff] in the Foreclosure Case, and will not report anything concerning this Agreement to any credit reporting agency.
>
> 12. Except for [Plaintiffs'] obligations under this Agreement, HSBC, ASC, Wells Fargo, and [Brock and Scott] hereby remise, release, acquit, satisfy, and forever discharge Mohamad of and from all manner of action and actions, causes and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which HSBC, ASC, Wells Fargo, and [Brock and Scott] had, now have, or shall or may have against [Plaintiff] for, or by reason of any loans made for which the Property is collateral. . . ."

Doc. 64 at 5. Further, the Settlement Agreement provides in paragraph 22 that "[a]ll parties agree to cooperate fully, to execute any and all supplementary documents, and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement." Doc. 49 at 11.

There is no dispute that Defendants have abstained from seeking a deficiency judgment. Thus, Defendants seek dismissal because they assert that the Settlement Agreement requires them to take no further action. But "[a] court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment." *Hess v. Coca-*

---

[6] Neither Wells Fargo nor Brock and Scott have objected to the Court's consideration of these terms. Further, the undersigned notes that while Plaintiffs purportedly incorporated the Settlement Agreement by reference in its Amended Complaint, Plaintiffs explicitly declined to attach the full Settlement Agreement to their pleading.

*Cola Refreshments USA, Inc.*, No. 8:13-CV-3136-T-33EAJ, 2014 WL 6909439, at *3 (M.D. Fla. Dec. 9, 2014) (citing *McKissack v. Swire Pac. Holdings, Inc.,* No. 09–22086–Civ, 2011 WL 1233370, at *3 (S.D. Fla. Mar.31, 2011) and *Moran v. Crystal Beach Capital, LLC,* No. 8:10–cv–1037–T–30AEP, 2011 WL 17637, at *4 (M.D. Fla. Jan.4, 2011)).  Taking the allegations in the Amended Complaint as true, the undersigned finds that Count IV "is plausible on its face," to the extent it sufficiently alleges a breach of the settlement agreement.  *Iqbal*, 556 U.S. at 678. Specifically, the crux of the dispute appears to be whether the Wells Fargo was required to take some action in the state court foreclosure proceeding in order to comply with the terms of the Settlement Agreement that required the parties "to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement."  To be sure, the undersigned does not read that language to require some ultimate action by the state court – i.e. the amendment of the 2008 judgment – but as alleged it is plausible that Wells Fargo may have been required to at least *seek* such amendment or take some other action based on the broad language of the parties' own Settlement Agreement.  Again, the undersigned finds that this is an issue better decided following discovery and at a later stage of these proceedings.  While Wells Fargo may ultimately be correct that it has not breached the terms of the Settlement Agreement, the undersigned finds that Plaintiffs have sufficiently alleged a breach in Count IV.

    *2.  Damages*

    But in addition to alleging a valid contract existed and a material breach occurred, Plaintiffs must also allege damages suffered as a result of that breach. *See Energy Smart Indus., LLC*, 660 Fed. Appx. at 862. "[T]o be recoverable, damages for breach of contract 'must arise naturally from the breach, or have been in contemplation of both parties at the time they made the contract, as the probable result of a breach.'" *T.D.S., Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1532 n. 11 (11th

Cir. 1985) (citing *Hobbley v. Sears, Roebuck and Co.*, 450 So. 2d 332, 333 (Fla. App. 1st Dist. 1984)).  Here, Plaintiffs have failed to sufficiently allege damages arising naturally from the breach and, as such, Count IV should be dismissed.

In their Amended Complaint, Plaintiffs alleged the following damages related to the breach of contract:

> 27. As a result of B&S and HSBC's inactions and omissions, the Plaintiffs have been forced to retain the undersigned to mitigate their damages by filing a motion in the foreclosure court seeking appropriate relief that reflects that the reservation of jurisdiction in the foreclosure judgment to enter a deficiency judgment was nullified by the parties' settlement agreement.
>
> 28. B&S and HSBC's inactions and omissions, and overall failure to adhere to the terms of the settlement agreement are intentional and willful because B&S has served the Plaintiff with a "57.105" 21-day safe harbor letter that threatens to file a motion for sanctions against the Plaintiffs and the undersigned for merely seeking to enforce the terms of the settlement agreement.
>
> 29. Because of the willful breach of contract, the Mohamads have been damaged. Specifically, the Mohamads have been denied traditional mortgage financing to secure the purchase of another home due to the prospective lenders' fear of the Mohamads having to pay a deficiency judgment.
>
> 30. In their pursuit to obtain a mortgage loan, the Mohamads have been quoted interest rates as high as 9% because the recorded final judgment of foreclosure in the foreclosure action reserves jurisdiction on deficiency proceedings and the potential pending deficiency proceedings is [sic] preventing the Mohamads from obtaining a conventional mortgage loan.
>
> 31. For example, that based on today's interest rates, if the Mohamad's borrow $300,000.00 to purchase a new home, they will pay an additional $53,902.00 in interest over 30 years based on a mere 1% percent [sic] interest rate increase based on the unsatisfied recorded final judgment.

Doc. 34 at 7.

At first blush, assuming that Plaintiffs sufficiently alleged a breach (i.e. Wells Fargo's failure to take some action to give full force and effect to the terms and intent of the Settlement Agreement, which, in turn, included the satisfaction of Plaintiffs' debt obligation to Wells Fargo),

it may appear that Plaintiffs sufficiently alleged damages flowing from that breach, in that they alleged that they suffered damages because lenders chose to lend to them at an extremely high rate due to the fear of Wells Fargo securing a deficiency judgment.  But upon a closer look, Plaintiffs' allegations are simply insufficient.   First, there are no allegations as to the timing of Plaintiffs' applications to other lenders or those other lenders' decisions to offer only high rates to Plaintiffs. Here, the state court entered the final judgment that included a reservation for the entry of a deficiency judgment on September 8, 2008.  The Settlement Agreement was executed on May 11, 2018 – almost ten years later.  But there are no allegations in the Amended Complaint as to the timing of the alleged damages; if the alleged damages were incurred prior to the parties' entry into the Settlement Agreement, then there would be no damages flowing from the alleged breach.  But even assuming that Plaintiffs' applied for and were offered the complained-of rates after May 11, 2018, the damages as alleged are purely speculative.  There is no dispute that Plaintiffs went through foreclosure proceedings that concluded in the sale of their property on September 11, 2018.   Surely those proceedings themselves, as opposed to any breach of the Settlement Agreement, may have resulted in the complained-of damages, and Plaintiffs' bald assertions to the contrary are simply insufficient to establish damages flowing from the alleged breach.

The undersigned having found that Plaintiffs failed to sufficiently allege damages, it is respectfully recommended that Count IV be dismissed.

c.  *__Count V: Breach of the Implied Covenant of Good Faith and Fair Dealing__*

In Count V, Plaintiffs assert that "Defendants acted in bad faith by failing or refusing to cooperate with the [Plaintiff's counsel] in filing the appropriate requests for relief in the foreclosure action to indicate that the Plaintiffs were discharged from any potential deficiency judgment." Doc. 34 at 15.  Further, they assert that "Defendants breached [their] duty of good faith and fair

dealing by failing or refusing to provide the [Plaintiffs] with their bargained for rights and benefits under the settlement agreement." Doc. 34 at 15. In its Motion to Dismiss, Brock and Scott argue as follows:

> A breach of implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation. Therefore, before there can be a breach of the implied covenant of good faith and fair dealing, there must be an underlying breach of contract.

Doc. 64 at 8.

For the same reasons discussed in the foregoing paragraphs concerning Count IV, the undersigned finds that Plaintiffs have failed to sufficiently allege a breach of an implied covenant of good faith and fair dealing. Accordingly, it is respectfully recommended that Count V be dismissed.

### d. *Count VI: Violation of Florida Statutes section 701.04(2)*

In Count VI, Plaintiff alleges that Brock and Scott and HSBC violated section 701.04(2) by failing "to send a recorded a [sic] satisfaction of judgment or mortgage to the [Plaintiffs] . . . indicating that the mortgage and/or judgment was satisfied pursuant to the parties' settlement agreement." Doc. 34 at 16. Brock and Scott seek dismissal of the Count, arguing that Plaintiff has misapplied the statute. Florida Statutes section 701.04(2) reads, in relevant part, as follows:

> Whenever the amount of money due on any mortgage, lien, or judgment has been fully paid to the person or party entitled to the payment thereof, the mortgagee . . . shall execute in writing an instrument acknowledging satisfaction of the mortgage, lien, or judgment and have the instrument acknowledged, or proven, and duly entered in the official records of the proper county. Within 60 days after the date of receipt of the full payment of the mortgage, lien, or judgment, the [mortgagee] shall send or cause to be sent the recorded satisfaction to the person who has made the full payment.

In response to the Motion to Dismiss, Plaintiffs claim that because Brock and Scott "discharged and satisfied the debt associated with the foreclosure action, [Brock and Scott] was

required to file the satisfaction of judgment . . . ."  Doc. 65 at 10.  But that argument is incongruent with the actual language of the statute, which requires a recorded satisfaction when "any mortgage . . . has been fully paid."  Fla. Stat. § 701.04(2).  Florida courts seem to require an actual money payment.  *See Parsons v. Ramsey*, 45 So. 991, 991 (1908) (holding that the plaintiff must provide facts sufficient "to establish the fact of payment"); *see also Central Hanover Bank & Trust Co. v. Smith*, 184 So. 513, 514 (1938) ("[T]he burden of proof was on the plaintiff to establish [that the mortgage had been paid] by a clear preponderance of the evidence."); *Wiggins v. Morrison*, 242 So. 2d 184, 185 (1970) (finding a single statement from the mortgagor that "I paid the mortgage off" was insufficient evidence of payment).  Further, Plaintiffs provide absolutely no legal authority for their reading of the statute.  Thus, because Plaintiffs did not allege that "the amount of money due" on the note had "been fully paid," the undersigned finds that Plaintiffs did not allege facts sufficient to support a cause of action under section 701.04(2).  Accordingly, the undersigned recommends that Count VI be dismissed.

### e. *Count VII*

Finally, Plaintiffs request declaratory relief in the form of "a determination as to the respective rights and obligations of the [Plaintiffs] and the Defendants under the settlement agreement."  Doc. 34 at 18.  Specifically, Plaintiffs seek a determination as to "whether the [Plaintiffs] owe any deficiency amounts due after the foreclosure sale, and if so, what pleadings and papers should be executed to memorialize as such . . . ."  With respect to Wells Fargo, Plaintiffs argue that Wells Fargo "has taken the position that it can maintain a deficiency judgment against the Plaintiffs."  Doc. 34 at 17.  As to Brock and Scott and HSBC, Plaintiffs argue that they "are actively preventing the [Plaintiffs] from taking any affirmative actions that would nullify the judgment of foreclosure that reserves jurisdiction for the collection of a deficiency judgment

against them." Doc. 34 at 17.  Defendants each argue that Plaintiffs' claim fails to establish a case

or controversy and is not ripe for resolution by the Court under the Declaratory Judgment Act, 28

U.S.C. § 2201(a) (the "Act").  The Act provides, in relevant part, the following:

> In a case of actual controversy within its jurisdiction . . . any court of the United
> States, upon the filing of an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201(a).

To be entitled to a declaratory judgment, Plaintiff must establish that there is a justiciable

controversy under the Constitution, which in this case requires there to be an "actual controversy"

within the meaning of the Declaratory Judgment Act.  *See Diamond State Ins. Co. v. Boys' Home*

*Ass'n, Inc.*, No. 3:13-cv-457-J-34PDB, 2014 WL 4626597, at *2-3 (M.D. Fla. Sept. 16, 2014)

(stating that questions of justiciability are governed by federal law, and finding that cases

interpreting the Declaratory Judgment Act's "actual controversy" requirement are instructive in

determining whether a declaratory judgment action presents a "case or controversy" within the

Court's judicial power to decide because the standard for an "actual controversy" under the

Declaratory Judgment Act is the same as the standard for a "case or controversy" under the

Constitution) (citations omitted); *see also Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981)

("The statutory standard for determining whether an 'actual controversy' exists within the meaning

of the Declaratory Judgment Act is the same as that under the 'case or controversy' requirement

of the Constitution.") (citations omitted).

When determining whether Plaintiff has established an actual controversy, "the question .

. . is whether the facts alleged, under all circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *Diamond State Ins.*, 2014 WL 4626597, at *4.  Although the

"fact that the controversy rests on a contingency does not necessarily defeat jurisdiction of a declaratory judgment action . . . , the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists." *Id.* (quoting *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567-69 (11th Cir. 1995)) (internal quotations omitted); *see also Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) ("Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. . . . There must be a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough.").

Moreover, to be entitled to a declaratory judgment, both federal and Florida law require Plaintiff to establish the existence of facts demonstrating the need for a declaratory judgment. *See, e.g., Malowney*, 193 F.3d at 1347 (stating that under federal law there must be a substantial continuing controversy between the adverse parties, the plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred, and the continuing controversy must be real and immediate, and create a definite threat and substantial likelihood that plaintiff will suffer future injury); *Santa Rosa Cty. V. Admin. Comm'n, Div. of Admin Hearings*, 661 So. 2d 1190, 1192-93 (Fla. 1995) ("[A]bsent a bona fide need for a declaration based on present, ascertainable facts, the circuit court lacks jurisdiction to render declaratory relief.") (citation omitted).  Neither federal nor Florida law permit the Court to enter a declaratory judgment based upon speculation and the mere possibility of legal injury.  *See, e.g., Malowney*, 193 F.3d at 1347; *Santa Rosa Cty.*, 661 So. 2d at 1193 ("Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal

injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, and rest in the future.") (citations and quotations omitted) (emphasis in original).

Plaintiffs request that the Court:

[M]ake a determination as to the respective rights and obligations of the [Plaintiffs] and the Defendants under the settlement agreement, to wit: whether the [Plaintiffs] owe any deficiency amounts due after the foreclosure sale, and if so, what pleadings and papers should be executed to memorialize as such; and an award of reasonable attorneys' fees pursuant to the parties' settlement agreement.

Doc. 34 at 18.

Plaintiff first asks the undersigned to consider "whether the [Plaintiffs] owe any deficiency amounts due after the foreclosure sale." Doc. 34 at 18. Here, Plaintiff has failed to establish an actual controversy necessary to warrant declaratory relief. Neither Wells Fargo nor Brock and Scott claim that any deficiency amount is due. Doc. 46 at 20; Doc. 64 at 11-12. Plaintiffs' reliance on the issuance of a monthly mortgage statement to support their allegation that "Wells Fargo has taken the position that it can maintain a deficiency judgment against the Plaintiffs" is tenuous, at best. Doc. 34, at 17. And Wells Fargo does not assert, expressly or implicitly, that it can maintain a deficiency judgment against Plaintiffs. Doc. 18 at 10. Thus, Plaintiffs fail to establish an actual controversy on which declaratory relief may be granted. Plaintiffs then makes a contingent request that, if the Court finds that a deficiency amount is not due, then the Court decide what "pleadings and papers should be executed to memorialize" that finding. Doc. 34 at 18. Having found that there is no actual controversy necessary to warrant a declaration as to the existence of a deficiency, this second request for a contingent declaration must necessarily fail.

Accordingly, the undersigned recommends Count VII of Plaintiffs' Amended Complaint be dismissed.

IV.    **Conclusion**

Accordingly, it is respectfully **RECOMMENDED** that:

1. Wells Fargo's Motion to Dismiss Amended Complaint (Doc. 46) be **GRANTED in part** and **DENIED in part**;

2. Brock and Scott's Motion to Dismiss Amended Complaint (Doc. 64) be **GRANTED**;

3. That Counts IV, V, VI and VII of the Amended Complaint be **DISMISSED without prejudice**; and

4. That HSBC be **DISMISSED without prejudice** from this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 4(d).

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 16, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy